## STATE OF CONNECTICUT *v.* WINSTON DUNCAN (AC 21058)

Foti, Schaller and Dupont, Js.

Argued September 24—officially released November 20, 2001

*Ruben Rodriguez*, with whom, on the brief, was, *Michael L. Moscowitz*, special public defender, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *John P. Doyle, Jr.*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The principal issue in this appeal is whether the trial court properly denied the defendant's motion to suppress evidence. The defendant, Winston Duncan, claims that police officers seized certain narcotics evidence during his arrest, and that their actions violated rights afforded him under the constitution of Connecticut, article first, §§ 7[1] and 9.[2] We disagree and affirm the judgment of the trial court.

---

[1] The constitution of Connecticut, article first, § 7, provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

[2] The constitution of Connecticut, article first, § 9, provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

The state charged the defendant with possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a) and assault of a peace officer in violation of General Statutes § 53a-167c (a) (1).[3] The defendant filed a motion to suppress certain narcotics evidence that the police had seized during his arrest on the grounds that the police did not have a reasonable and articulable suspicion to detain him and that the search exceeded the lawful scope of an investigative detention. After an evidentiary hearing, the court denied his motion to suppress. The defendant then entered a conditional plea of nolo contendere to the charges pursuant to General Statutes § 54-94a.[4] The court accepted the defendant's conditional plea and rendered judgment on the basis of that plea.[5]

At the hearing on the defendant's motion to suppress, the court found the following facts. "On or about November 6, 1999, at approximately 7 p.m., Officer [Michael] Novella and [Officer Aelisa] Koleci of the New Haven police department were patrolling the Waverly Street housing complex, a public housing complex which is owned and managed by the New Haven hous-

---

[3] The state also charged the defendant in a part B information with being a persistent narcotics offender because he had been convicted on June 30, 1995, of two counts of sale of narcotics in violation of General Statutes § 21a-277 (a).

[4] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure, motion to suppress statements and evidence based on the involuntariness of a statement or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[5] The court sentenced the defendant on each count to a term of five years imprisonment and five years special parole to run concurrently.

ing authority. This location is well known as a high drug trafficking area where narcotics such as crack cocaine are sold daily and where numerous arrests have been made. A standing trespassing complaint had been filed with the New Haven police department by the New Haven housing authority to arrest those persons, other than tenants and their guests, who continued to enter the Waverly complex. 'No trespassing' signs are posted on exterior walls and alleyways of the buildings so that they can be viewed by people walking into the complex courtyard. While monitoring the complex [and] looking for trespassers, Officers Novella and Koleci were walking through the courtyard and observed the defendant, Winston Duncan, alone, leaning on a fence, behind one of the units of the complex, at either 24 or 25 Waverly Street. The defendant was not a stranger to the police: Officer Novella had known the defendant for nearly ten years and interacted with him numerous times, had arrested him before, knew the defendant's nickname, 'Triny,' and also knew that the defendant did not reside at the complex. The defendant resided at . . . an address located outside of the perimeter of the complex. Based on this information and [his] experience, Officer Novella approached the defendant to determine if he was trespassing. As the officer approached the defendant, the defendant placed an item or items in his mouth, turned away and appeared to be intensely chewing and swallowing something. Officer Novella questioned the defendant about his presence in the courtyard, grabbed him, and told him to spit out whatever he had in his mouth. Officer Novella repeatedly asked the defendant what he was doing in the courtyard. The defendant refused to respond to the officer's repeated questions and remained silent and noncooperative while he continued to chew vigorously on something. Thereafter, Officer Novella arrested the defendant for criminal trespass in the third degree,[6]

[6] It does not appear from the record that the state pursued that charge.

taking the defendant into custody and handcuffing him. Shortly after he placed the item in his mouth, a white residue or substance emerged on the defendant's lips and the corners of his mouth. Officer Novella believed the substance to be, and it appeared to be, consistent with crack cocaine. Officer Shafiq Abdussabur arrived on the scene subsequent to the arrest to assist Officers Novella and Koleci. Officer Abdussabur was informed by the officers that the defendant had something in his mouth and was attempting to swallow it. Officer Abdussabur observed a bulge on the side of the defendant's mouth as well as a white pasty residue on the inner and outer part of his lips. Believing the substance was crack cocaine, Officer Abdussabur tried to clear the defendant's mouth of the items with his hand. The defendant bit down on the policeman's finger and, consequently, Officer Abdussabur was forced to use pepper spray on the defendant to remove his finger from the defendant's mouth. Emergency medical services were called and took the defendant to a hospital because there was concern for his safety from the possibility of ingesting narcotics, but the defendant, however, refused treatment at the hospital. A search incident to the arrest revealed the following from the defendant's pockets: One small, blue packet containing a white, rock-like substance resembling crack cocaine, one small, blue packet containing white residue, forty empty small, blue packets found in either a white envelope or a large plastic bag, and over one-hundred forty dollars ($141.26) in United States currency. The white rock-like substance produced a positive test for the presence of cocaine. No items were recovered from the defendant's mouth."

On appeal, the defendant concedes that a reasonable and articulable suspicion existed to justify his initial

detention.[7] He argues, however, that the police exceeded the lawful scope of an investigative detention.

"As a threshold matter, we set forth the appropriate standard pursuant to which we review a challenge to a trial court's [ruling on] a suppression motion. This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. That is the standard and scope of this court's judicial review of decisions of the trial court. . . . In other words, to the extent that the trial court has made findings of fact, our review is limited to deciding whether those findings were clearly erroneous. Where, however, the trial court has drawn conclusions of law, our review is plenary, and we must decide whether those conclusions are legally and logically correct in light of the findings of fact." (Citations omitted; internal quotation marks omitted.) *State* v. *Velasco*, 248 Conn. 183, 188–89, 728 A.2d 493 (1999).

Under our state constitution, a police officer may detain an individual for investigative purposes if he or she possesses a reasonable and articulable suspicion that such person "has committed or is about to commit a crime." *State* v. *Lamme*, 216 Conn. 172, 184, 579 A.2d 484 (1990).

---

[7] The defendant made that concession during oral argument before this court, and in his reply brief he stated that "[i]n our case, Officer Novella was ten to thirty feet away when he first had [a] reasonable and articulable suspicion that [the defendant] was trespassing."

The defendant claims that the police officers exceeded the permissible scope of their investigative detention and enlarged the scope of the detention without proper justification. In that regard, he argues that Novella "attacked" him in the courtyard by grabbing him before asking him about his presence.[8] We find no merit in the defendant's argument. It is of no consequence whether he was "grabbed and then asked" or "asked and then grabbed" because either or both actions took place after Novella observed the defendant putting the items in his mouth.

We also cannot conclude that the court improperly found that the officer's action in grabbing the defendant's outer clothing constituted an unreasonable use of force, given the circumstances of an otherwise peaceful investigative detention supported by a reasonable and articulable suspicion. The court accepted as credible Novella's testimony that he reasonably believed that the defendant may have ingested life threatening narcotics and was concerned for the defendant's safety, and that on the basis of his training and experience, he believed the defendant had narcotics in his mouth for the purpose of avoiding detection. The amount of force was not unreasonable and, therefore, the investigative detention was not converted to an arrest at that time. The court's conclusion is legally correct, and it is based on its factual findings, which were supported by the evidence, namely, that Novella did not exceed the justifiable parameters of an investigative detention.

In any event, the lawful search of the defendant incident to his arrest on the charge of criminal trespass in the third degree revealed the evidence that the defen-

---

[8] Although the defendant agrees that the evidence presented demonstrates that he was a "trespasser and that when approached by the police he turned away and put something in his mouth and began chewing it," he claims that the court improperly found that " 'Novella questioned [him] about his presence in the courtyard, [then] grabbed him . . . .' "

dant sought to suppress. Because the narcotics properly were seized during a search incident to a lawful arrest, we conclude that the court properly denied the defendant's motion to suppress.

The judgment is affirmed.

In this opinion the other judges concurred.