[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF's MOTION FOR MODIFICATION, POST JUDGMENT
The plaintiff has moved to modify the order of Support entered on December 6, 1995, at the time of the decree of dissolution of the parties' marriage in Rockland County, New York. On February 12, 1996, pursuant to § 45b-71 of the Connecticut General Statutes, the New York decree was filed in the State of Connecticut. The provisions of that judgment providing for support of the minor child Chloe are sought by the plaintiff to be modified.
The child was born September 25, 1981, and at the time of the original decree was residing with the defendant. The parties are unable to agree on where she is residing at the present time. Commencing in January, 1998, she started residing with her father in New York City.
As may be seen by the birth date of the child, Chloe, the plaintiff seeks to modify a provision in the parties' separation agreement providing for post majority child support if majority is the age of 18. If this motion were brought under the provisions of § 46b-86 (a) of the General Statutes, it would be subject to a motion for dismissal for lack of jurisdiction of the court to modify a post majority agreement of the parties. Albrecht v. Albrecht, 19 Conn. App. 146 (1989); cert. denied212 Conn. 813 (1989); see Sherman v. Sherman, 41 Conn. App. 803 (1996);O'Brien v. O'Brian, 67 Conn. App. 31 (2001). It is interesting to note that if this agreement were executed after July 1, 2001, in the State of Connecticut, this court would have jurisdiction to modify the agreement. CT Page 1000P.A. 01-135 Section 1(b). However, since this is a decree of the State of New York and the separation agreement of the parties provided that the interpretation of the agreement and the rights of the parties shall be governed by the laws of the State of New York, it is claimed by the plaintiff that this court has jurisdiction to modify the New York decree. The age of majority in New York continues to be twenty-one. Both parties agree that New York law applies.
There is disagreement between the parties, however, as to whether even under New York law this agreement may be modified. The leading cases on this issue, both decided by the Court of Appeals, are Boden v. Boden42 N.Y.2d 210, 366 N.E.2d 791, 397 N.Y.S.2d 701 (1977) and Brescia v.Fitts, 56 N.Y.2d 132, 436 N.E.2d 518, 451 N.Y.S.2d 68 (1982). The Boden
case involved a petition to modify upward a child support obligation in an agreement. The family court first denied the application, the Supreme Court thereafter reversed the order and granted the petition and the Appellate Court reversed. The court held that the agreement manifested an understanding that the child might pursue college and made a specific provision for a fund to cover college expenses. The Appellate Court reversed on the ground that there was no showing of an unforeseen change in circumstances, or that the agreement was not fair and equitable when entered into. It is the plaintiff's claim that since the court speaks of unforeseen or unusual circumstances that this permits modification in this case.
In the case of Brescia v. Fitts, supra, the question presented was whether or not the family court, not being a court of equity, could modify a child support order upon a showing of changed circumstances. The court there affirmed a decision of the family court modifying the previous award of a support order upward. Citing McKinney's Family Court Act § 461. That act gives the family court authority to modify a child support order.
The question presented in this case is different. It is not dealing with the general question of modification upon a showing of changed circumstances or, indeed, on the question of the evidence required for modification. It is dealing with the question of whether under New York law this agreement may be modified.
The following facts and procedural history are relevant to this matter. After fourteen years of marriage, the parties entered into a written separation agreement to define their respective financial and property rights, remedies, privileges and obligations to each other arising out of their marriage. (See plaintiff's exhibit A.)
Article VIII(a) of the separation agreement provides for joint custody CT Page 1001 of the minor child Chloe, who shall reside with her mother.
Article VIII (a)(8)(a) acknowledges and reconfirms that "under no circumstances will the Father contest custody of the child."
The parties' agreement of child support and maintenance is contained in Article IX(b), which provides in full as follows:
 The HUSBAND shall pay to the WIFE, as and for child support for the child CHLOE NATHAN, the sum of $1,200.00 per month commencing the 1st day of October, 1993 and continuing monthly thereafter until the child reaches twenty-two (22) years of age or until the child completes her undergraduate education, whichever shall first occur. Child support shall be increased (but in no event decreased below $1,200.00 per month) pursuant to the following two separate and distinct formulas, each applicable to separate and distinct forms of income of the HUSBAND:
 (1) Commencing August 1, 1994, and annually thereafter in the month in which the HUSBAND's base salary increases, child support shall be increased by either (whichever is greater) (a) the same proportion as the Consumer Price Index (CPI) for July 1994, and each subsequent year, as published by the U.S. Department of Labor, Northeastern United States-All Items (U) increases over the CPI for July 1993 -OR- (b) child support shall increase by a sum equal to the percentage of each increase in the HUSBAND's base salary (excluding royalties, research grants, awards for conference participation, consulting fees, summer school compensation and speaking fees). Such increase shall commence on the child support payment date next succeeding the effective date if each base salary increase. The HUSBAND shall furnish to the WIFE a copy of his W-2 form each year and documentary evidence of increase in base salary, within ten (10) days of its receipt.
 (2) In addition to monthly child support, child support shall include an amount equal to ten (10) per cent of the HUSBAND's consulting fees for the previous year, to be paid annually in April in a lump sum. The amount thereof may fluctuate up or down from year to year. In connection therewith, the HUSBAND shall furnish the WIFE CT Page 1002 with a list of all consulting fees and speaking fees in September of each year and copies of applicable 1099's in April of each year.
The parties' agreement for child support when the child is residing as a student at college is contained in Article IX(c) and provides in full as follows:
 (c) Notwithstanding the provisions of the preceding subparagraphs, it is agreed that during those months when the child is residing as a student at college or university housing, the monthly payments for child support shall be two thirds of the sum otherwise payable. Child support shall not be further reduced during sabbatical periods or during illness covered by disability insurance.
Chloe commenced living at her father's house in January, 1998. She graduated from high school in June, 1999. During this period, by stipulation dated November 18, 1997, the parties agreed that the plaintiff's obligation to pay support was suspended. The stipulation further provided that if Chloe continued to live with her father the defendant would pay child support in the amount of $1,000 per month for each month the child resides with her father until the child's nineteenth birthday or her graduation from high school. The defendant mother did pay such child support until Chloe graduated from high school in June, 1999. After her graduation, Chloe spent the summer with her father except for a visit to her mother which both parties believe may have been for three weeks. She then started Wellesly College where she attended for the school year 1999-2000 and 2000-2001. At the time of this proceeding, she was about to enter her third or junior year. While not at college, she has her mail, including her bank statements, sent to her father's address in New York City, she is registered to vote in New York and she has a New York drivers s license.
The parties by their agreement established an educational account for Chloe to pay all remaining collage expenses. In addition, Chloe has about $92,000 in other bank and brokerage accounts. While the parents are unable to agree with whom Chloe now resides, they do agree that Chloe is at Wellesley most of the year. She visits both parents on vacations, travels extensively and worked the past two summers outside the New York-Connecticut area. Both parties maintain sufficient space to accommodate Chloe's belongings. During the summer of 2001, she spent approximately ten days with each parent. During the months of May through August, Chloe's father gives her an allowance of $364 per month. CT Page 1003
The present order of the court providing for support to be paid by the plaintiff to the defendant have not previously been modified nor has there been an amendment to the parties' agreement. The plaintiff has moved for modification alleging a substantial change of circumstances in that the minor child has graduated from high school and continues to make her primary residence with him. The plaintiff seeks a suspension of the child support order and that the defendant pay him a reasonable sum for Chloe's support. While it may be just a matter of semantics, the rule in New York is that there has been an unreasonable or unanticipated change in circumstances. Brescia v. Fitts, supra.
Both parties filed financial affidavits with the court on August 1, 2001. The defendant's financial affidavit shows assets of $3,378,883. Plaintiff's exhibit G, which was the most recent tax return of the defendant in evidence, shows an adjusted gross income of $551,000. The plaintiff's earned income for 1999 was $146,000. His financial affidavit dated July 30 shows assets of $863,000. The plaintiff has three minor children issue of his present marriage.
It is clear to the court that Chloe's principal residence is with her father in New York. The fact that she has a New York driver's license, that she is a registered voter in New York and that her mail, except that which is mailed to her directly at Wellesley, is sent to the plaintiff's address all demonstrate to the court that Chloe considers her primary residence to be that of her father. Based upon all the evidence, the court does so find. The fact that Chloe's primary residence continues to be with her father is an unanticipated change of events such that the orders of support by the plaintiff to the defendant should be suspended.
The remaining question is the effective date of this order. The amendment to the agreement executed by the parties on November 19, 1997, provided for child support to be paid by the defendant to the plaintiff. That support was to continue until Chloe reached the age of nineteen or graduated from high school, whichever first occurred. As previously noted, Chloe graduated from high school in June, 1999. The plaintiff has paid no child support since. It is the defendant's claim that the defendant owes her support since June, 1999.
The parties, by their November 19, 1997, agreement, provided for suspension of support by the plaintiff "for the duration of the child's high school education." The defendant claims that from and after that date the provisions of Article Nine, paragraph (b) continue to be operative. It is clear, then, from the agreement that support was to return to payment by the plaintiff to the defendant in accordance with the agreement. For the court to permit suspension back to June of 1999 would amount to a retroactive modification of the support orders. Both CT Page 1004 under Connecticut law and New York law, retroactive modification is not permitted. New York Domestic Relations Law, section 240. Under New York law, modification is retroactive to the date of the application. New York Domestic Relations Law, section 236. Both section 236 and section 240 of the New York Domestic Relations Law refer to the date of application.
On June 29, 1999, the plaintiff filed a motion for modification of child support moving that his obligation of child support be suspended and that the order for the defendant to pay child support to the plaintiff be likewise continued. That motion was mailed to counsel for the defendant on June 28, 1999. The motion was served upon the defendant on June 30, 1999. The motion appeared on the short calendar list for July 15, 1999 (see exhibit D). No action was taken on the motion at that time. Thereafter, on October 26, 2000, a second motion for modification was served upon the defendant.
It is the defendant's claim that any modification cannot be retroactive to June 30, 1999, since the motion was never pursued. Under Practice Book § 25-34(c), it is the defendant's claim that the motion became stale since it was never heard within the three month requirement of the Practice Book.
The defendant claims that neither the June 30, 1999, motion nor the motion of October 26, 2000, were properly served with an order to show cause signed by the clerk of the court. Both motions simply contained a notice of the pendency of a motion for modification and then sets forth the motion.
It is clear that either under New York law or Connecticut law the purpose of the requirement of service is notice to the other party. By reason of service of both motions, the defendant had notice of these motions. During the period July, 1999, to October, 2000, the court file shows no activity. However, it is clear from the affidavits filed by plaintiff's counsel that negotiations between the parties were continuing during all of that time.
The time limit set forth in Practice Book § 25-34(c) is a procedural matter rather than a substantive matter. We refer to New York law on substantive matters but to the law of the place of the forum on procedural matters. The question of retroactivity to June 30, 1999, the court rules is a procedural matter. Section 25-34 (c) provides in pertinent part as follows: "Unless for good cause shown, no motion may be reclaimed after a period of three months from the date of filing." (Emphasis supplied.)
Negotiations between the parties continued from July, 1999 until CT Page 1005 February, 2000. (See affidavit of plaintiff's counsel.) In March, 2000 that counsel was appointed to the Superior Court. On May 1, 2000, defendant's counsel sent a facsimile to plaintiff's counsel resending a February facsimile that had not been received by plaintiff's counsel stating that there was no agreement. Following receipt of that notice, plaintiff's counsel asked the office litigation assistant to file reclaim slips. These evidently were thrown away by the clerk's office in accordance with § 25-34 (c) of the Practice Book and the case was not printed on any short calendar. Plaintiff's attorney, thereafter, caused the notice of motion for modification to be served again upon the defendant. (See affidavits of plaintiff's counsel.) The affidavit of Michael E. Shay notes in paragraph 8 that "the timing of the Motion and its service (in June, 1999) was done in order to preserve the claim of retroactivity."
The court finds that there has been good cause shown so that the provisions of § 25-34 (c) of the Practice Book do not apply in this case. The orders for support for Chloe are suspended from June, 1999. So much of the motion as seeks the continuation of the order that the defendant pay $1,000 per month to the plaintiff is denied.
There was adequate question by the plaintiff of his financial obligation regarding support. The court does not find a wilful and intentional violation of the court's orders. The defendant's request for counsel fees pursuant to § 46b-87 is denied. The defendant's claim for counsel fees pursuant to any equitable relief is likewise denied.
The motion for modification is granted. Support is suspended until Chloe reaches the age of twenty-one years whether or not she has completed her undergraduate education.
The motion for contempt is denied.
EDGAR W. BASSICK, III JUDGE TRIAL REFEREE CT Page 1006