STATE OF CONNECTICUT *v.* VAUGHN OUTLAW
(AC 19968)

Dranginis, Flynn and McDonald, Js.

Argued January 23—officially released June 4, 2002

*Richard Hustad Miller*, special public defender, for the appellant (defendant).

*John Louis DeMattia*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*,

state's attorney, and *James G. Clark*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MCDONALD, J. The defendant, Vaughn Outlaw, appeals from the judgment of conviction, rendered after a trial to the jury and to the court, of assault in the first degree in violation of General Statutes § 53a-59 (a),[1] criminal possession of a firearm in violation of General Statutes (Rev. to 1997) § 53a-217[2] and carrying a pistol or revolver without a permit in violation of General Statutes § 29-35.[3] On appeal, the defendant claims that the trial court improperly permitted the state to introduce evidence obtained from his premises without a search warrant. We affirm the judgment of the trial court.

The jury and the court reasonably could have found the following facts.[4] At about 12:40 a.m. on April 3, 1998, the victim, Lorenzo Grier, went to Silhouette's Cafe in New Haven. While inside, the victim was hit on the head with a bottle and a fight broke out. As a crowd gathered around the two men who were fighting, the defendant, who did not have a pistol permit, fired a nine millimeter handgun ten to twelve times. Once the gunshots ceased, the victim attempted to leave. Upon

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[2] General Statutes (Rev. to 1997) § 53a-217 (a) provides in relevant part: "A person is guilty of criminal possession of a firearm . . . when he possesses a firearm . . . and has been convicted of a . . . class B felony . . . ."

[3] General Statutes § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon one's person . . . without a permit to carry the same issued as provided in section 29-28. . . ."

[4] The defendant elected to have the charges of assault in the first degree and carrying a pistol without a permit tried to the jury, and the charge of criminal possession of a firearm tried to the court.

reaching the door, the victim looked back and saw the defendant with a gun. While the victim was reaching for the door, the defendant shot him in the back. As a result, the victim lost half of his left lung.

On April 9, 1998, the police went to the defendant's residence on Lombard Street in New Haven. While there, the officers observed and seized a loaded nine millimeter handgun and nine millimeter ammunition of the same manufacture as some of the spent shell casings found at Silhouette's Cafe. The handgun and some of the ammunition were admitted into evidence at the defendant's trial, which ended in his conviction. This appeal followed.

It is the defendant's contention that the handgun and ammunition should have been suppressed because the police did not have a warrant to search his premises, and the search conducted by the police was unconstitutional, as it did not fall within the plain view exception to the warrant requirement.[5] We disagree.

Prior to trial, the defendant filed a motion to suppress the evidence. At the hearing on the motion, the state called Detective Thomas Trocchio of the New Haven police department to testify that he was called to the scene by officers from the Connecticut fugitive task force after they had observed the evidence in plain view while they were apprehending the defendant at his residence. Trocchio testified that all of the items to be admitted into evidence were found in the room where the handgun was found and where the defendant was arrested, a room that was approximately ten feet by twelve feet in size. He testified that when he entered

[5] "The defendant invokes both the United States constitution and the constitution of the state of Connecticut in support of his claims in his brief. He has not, however, provided any independent analysis of the state constitutional claims. We therefore decline to review them." *State* v. *Davis*, 51 Conn. App. 171, 176 n.10, 721 A.2d 146 (1998).

the apartment, all of the items were in plain view, some of the officers were present and none of the evidence had been moved.

At the time of the hearing on the motion to suppress, the defendant's counsel stated that the defendant was not questioning the police officers' "presence on the legality of his being [in the apartment.]" He also conceded that the defendant could not prevail on the motion to suppress if the trial court concluded that the state had proven the items were in plain view. The court stated that it understood the basis for the motion to suppress as being that the items taken "from the defendant's apartment" were not in plain view and could not be legally seized by the officers who "conceivably [had] the right to be upon the premises to make the arrest . . . ."

The court concluded that the officers had a right to be there and to seize the items from the defendant's apartment. The court understood, without contradiction from the defendant, that the question before it was "not whether the officers had a right to be there, but whether or not the items which were seized were in plain view . . . ." After hearing Trocchio's testimony and reviewing the photographs of "the room," the court found "the room in question" to be ten feet by twelve feet and that all the items seized were in that room in the same position as when they were found by the officers who first arrived at the premises. The court concluded that the items in question were in plain view at all relevant times and denied the defendant's motion to suppress.

The defendant does not challenge the validity of the arrest warrant that gave the police authority to arrest him at his residence. See *Payton* v. *New York*, 445 U.S. 573, 603, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980); *United States* v. *Lauter*, 57 F.3d 212, 214 (2d Cir. 1995). It is

the defendant's claim that because the police had an arrest warrant, and not a search warrant, they violated his fourth amendment rights when they observed those items in his apartment.

"Subject to a few well defined exceptions, a warrantless search and seizure is per se unreasonable. . . . The state bears the burden of proving that an exception to the warrant requirement applies when a warrantless search has been conducted. . . . Under both the federal and the state constitutions, the police must first obtain a warrant before conducting a search, unless an exception to the warrant requirement applies. . . . Entry by the government into a person's home . . . is the chief evil against which the wording of the Fourth Amendment[6] is directed." (Citations omitted; internal quotation marks omitted.) *State* v. *Brocuglio*, 64 Conn. App. 93, 99–100, 779 A.2d 793, cert. granted on other grounds, 258 Conn. 908, 782 A.2d 1247 (2001).

"In *Coolidge* v. *New Hampshire*, 403 U.S. 443, 464–73, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971), the United States Supreme Court articulated what has become known as the plain view exception to the warrant requirement." *State* v. *Eady*, 249 Conn. 431, 436, 733 A.2d 112, cert. denied, 528 U.S. 1030, 120 S. Ct. 551, 145 L. Ed. 2d 428 (1999). As later modified, "[t]he warrantless seizure of contraband that is in plain view is reasonable under the fourth amendment if two requirements are met: (1) the initial intrusion that enabled the police to view the items seized must have been lawful; and (2) the police must have had probable cause to believe that these

---

[6] The fourth amendment to the United States constitution, made applicable to the states through the fourteenth amendment, provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

items were contraband or stolen goods." (Internal quotation marks omitted.) Id., 437.

"The rationale of the plain-view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment—or at least no search independent of the initial intrusion that gave the officers their vantage point." *Minnesota* v. *Dickerson*, 508 U.S. 366, 375, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993). "[T]he police need not ignore incriminating evidence in plain view while they are operating within the parameters of a valid search warrant or are otherwise entitled to be in a position to view the items seized." (Internal quotation marks omitted.) *State* v. *Sailor*, 33 Conn. App. 409, 414, 635 A.2d 1237, cert. denied, 229 Conn. 911, 642 A.2d 1208 (1994).

It is the defendant's contention on appeal that the state failed to meet its burden of proving that the circumstances of his arrest enabled the police to view the items that were seized. The court, in denying the defendant's motion to suppress, concluded "as a matter of fact based upon the testimony of Detective Trocchio and the inferences which may be fairly drawn from [his testimony], as well as from the photographs of the room and the items that are in question, that the items were, in fact, in plain view at all relevant times and therefore subject to seizure under the plain view doctrine." In this case, the defendant on appeal challenges the factual findings made by the court. Because we are reviewing a trial court's factual findings, we will not disrupt the court's determinations unless they are not supported by the evidence or are clearly erroneous. See *State* v. *Duncan*, 67 Conn. App. 29, 34, 786 A.2d 537 (2001).

"As a threshold matter, we set forth the appropriate standard pursuant to which we review a challenge to

a trial court's [ruling on] a suppression motion. This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. That is the standard and scope of this court's judicial review of decisions of the trial court. . . . In other words, to the extent that the trial court has made findings of fact, our review is limited to deciding whether those findings were clearly erroneous. Where, however, the trial court has drawn conclusions of law, our review is plenary, and we must decide whether those conclusions are legally and logically correct in light of the findings of fact." (Internal quotation marks omitted.) Id.

Despite his concessions before the trial court, the defendant on appeal asserts that the state failed to prove that the police were lawfully in a position to view the items seized. At the hearing on the motion to suppress, the only witness was Trocchio. The defendant did not introduce any evidence. While we acknowledge that the state has the burden of establishing that an exception to the warrant requirement is applicable in a given case, the defendant's decision to not present any evidence left the court with the uncontroverted testimony of Trocchio. Trocchio testified that he prepared an arrest warrant for the defendant, charging him in the shooting of the victim. While the warrant was being served on the defendant "at his apartment" by the fugitive task force, Trocchio was called to that location because additional evidence was discovered. He then identified "a photograph of the closet of [the defendant's] room on

Lombard Street." He further stated that the photograph showed how the handgun was positioned when he "entered the apartment." Trocchio later testified that when he "walked into the door [the confiscated items] were there."

Trocchio identified a photograph of a holstered nine millimeter handgun in the defendant's open closet, which was fully loaded. He also identified a photograph of a box of Remington nine millimeter bullets on top of other items on a table. Trocchio also observed loose nine millimeter bullets in the room, as well as a shotgun, two rifles, marijuana and a triple beam scale. The following direct examination ensued:

"[Prosecutor]: All right. And it is your testimony that all of the items that you have so far mentioned, the items in the room where the gun was found and where [the defendant] was arrested?

"[Trocchio]: That is correct, sir.

\* \* \*

"[Prosecutor]: All right. And what was the approximate size of the room that we are talking about?

"[Trocchio]: I believe it was perhaps ten by twelve. Ten feet by twelve feet."

On cross-examination, the following colloquy took place between defense counsel and Trocchio:

"[Defense Counsel]: Okay. All right. So, is it fair to say that these items that you testified to had been previously discovered by the police who had executed the arrest warrant on the defendant?

"[Trocchio]: They had been previously found by the arresting officers in plain view in [the defendant's] apartment.

"[Defense Counsel]: Okay. And they showed you these items when you arrived?

"[Trocchio]: Well, when I walked into the door they were there, sir."

There was no hearsay objection to that evidence at the suppression hearing. During argument after the hearing, defense counsel acknowledged that no such objection was made and that the evidence was "in for all purposes." "Hearsay evidence admitted without objection, if believed by the [trier or fact], is a sufficient basis for a finding of fact." (Internal quotation marks omitted.) *In re Juvenile Appeal (83-BC)*, 189 Conn. 66, 75 n.6, 454 A.2d 1262 (1983). "As explained by Professor McCormick: If [inadmissible] evidence is received without objection, it becomes part of the evidence in the case, and is usable as proof to the extent of the rational persuasive power it may have. The fact that it was inadmissible does not prevent its use as proof so far as it has probative value. . . . This principle is almost universally accepted. . . . The principle applies to any ground of incompetency under the exclusionary rules. It is most often invoked in respect to hearsay, but it has been applied to evidence vulnerable as secondary evidence of writings, opinions, evidence elicited from incompetent witnesses or subject to a privilege, or subject to objection because of the want of authentication of a writing, of the lack-of-knowledge qualification of a witness, or of the expertness qualification. 1 C. McCormick, Evidence (4th Ed. 1992) § 54, pp. 219–20." (Internal quotation marks omitted.) *State* v. *Carey*, 228 Conn. 487, 496, 636 A.2d 840 (1994).

We conclude the state met its burden of proving that the items were in the officers' plain view when the defendant was arrested pursuant to an arrest warrant.[7]

---

[7] In his brief to this court, the defendant claimed that if he was arrested immediately upon opening his door or if he had voluntarily submitted to the police when they knocked on the door, the police would have had no justification to enter his apartment. No evidence to that effect, however, was introduced at the hearing. Moreover, when arresting the defendant in his residence, in light of the fact that the defendant was being charged with a violent crime involving a firearm, the officers had a right to conduct a

It was established that the defendant was arrested in his apartment. Trocchio referred to the location as "the apartment" or "the room." Trocchio's testimony also established that the loaded handgun, along with the other confiscated items, was in plain view upon entering the apartment, or in Trocchio's words, when he "walked into the door." Further, Trocchio also testified that the seized items had not been moved since the arresting officers initially saw them. Hence, there was testimony from which the court could conclude that the evidence was in plain view where the defendant was arrested. "[I]t is well established that the evaluation of [witnesses'] testimony and credibility are wholly within the province of the trier of fact. . . . [I]t is the trier's exclusive province to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony." (Citation omitted; internal quotation marks omitted.) *Hoffer* v. *Swan Lake Assn., Inc.*, 66 Conn. App. 858, 861, 786 A.2d 436 (2001). Additionally, it was the trier's exclusive province to draw reasonable inferences from the testimony. See *Morant* v. *State*, 68 Conn. App. 137, 157, 802 A.2d 93, cert. denied, 260 Conn. 914, 796 A.2d 558 (2002). The court heard the testimony of Trocchio, and found that it was credible and that it established that the items seized were in plain view when Trocchio entered the defendant's apartment or room where he was arrested.

We, accordingly, reject the defendant's argument that the state did not put forth "any evidence whatsoever to carry its burden of persuasion that the police had lawfully entered [his] apartment or bedroom." Furthermore, the defendant did not distinctly or fairly present

"protective sweep" of the closets and other spaces immediately adjoining the place of arrest to prevent an attack that could have been immediately launched. See *Maryland* v. *Buie*, 494 U.S. 325, 110 S. Ct. 1093, 108 L. Ed. 2d 276 (1990); *United States* v. *Lauter*, supra, 57 F.3d 216.

that claim, which he now makes on appeal, to the trial court. See *State* v. *Groomes*, 232 Conn. 455, 465, 656 A.2d 646 (1995). The defendant's counsel, to the contrary, conceded that the officers were legally at the defendant's apartment to arrest him. His claim at the suppression hearing was that the evidence was "not in plain view." Because the defendant, as a result of his concessions, meets neither the requirements of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[8] nor those required for plain error[9] review, we would be justified in refusing to entertain the defendant's unpreserved claim. Our review of the court's ruling should be directed to the issues fairly presented on the record to the court. See *State* v. *Newsome*, 238 Conn. 588, 597, 682 A.2d 972 (1996); *State* v. *Adams*, 225 Conn. 270, 287 n.12, 623 A.2d 42 (1993). In this case, we should note that the defendant's counsel did not dispute the court's statement that the issue presented to it was not the legality of the officers' presence, but whether the evidence was in plain view when observed by those officers. Accordingly, we affirm the judgment of conviction.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[9] "Plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Senquiz*, 68 Conn. App. 571, 580 n.7, 793 A.2d 1095, cert. denied, 260 Conn. 923, 797 A.2d 519 (2002).