**BEATTY et al. v. DONAHUE.**

Court of Appeals of Kentucky.
May 16, 1952.

Booth & Booth, Louisville, for appellants.

Hardy & Logan, Louisville, for appellee.

CULLEN, Commissioner.

Elizabeth Harris, Mary Elizabeth Beatty and Vernon Lay Beatty, who are, respectively, the widow, daughter and son-in-law of Walter Harris, deceased, are appealing from a judgment which reformed a deed in which Walter Harris was the grantee and his sister, Norma Donahue, was a grantor. The deed was reformed on the ground of mutual mistake, and the sole contention of the appellants is that the mistake was not mutual, but was unilateral. The action involves a strip of land only 30 feet in length and 9 feet and 8 inches in width, but which has particular value because it is occupied by part of a dwelling house.

Prior to his death in 1931, George Harris, who was the father of Walter Harris and Mrs. Donahue, purchased two adjoining lots in the City of Louisville. One lot, which we will call the North Lot, had a frontage of 105 feet and 8 inches on 35th Street. The other lot, which adjoined it on the south and which we will call the South Lot, had a frontage of 25 feet on the same street. George Harris built one house on the North Lot, and then built a second house

the most of which was on the South Lot but which extended 9 feet and 8 inches onto the North Lot. The house on the North Lot, which faced on an intersecting street, was known as 3500 West Main Street, and the other house was known as 108 South 35th Street.

George Harris also owned other real estate in Louisville, and upon his death his widow acquired ownership of all of his real estate, pursuant to his will. The widow died in 1938, leaving the estate, in bulk, to their six children in equal shares.

In 1940, the six children proceeded to make an agreed division of the estate, under which each child received one or more parcels of real estate, at agreed values; some of the children being required to pay cash into the estate in order to equalize the shares. All of the children joined as grantors in the various deeds by which the individual parcels of real estate were conveyed to the respective grantees.

Walter Harris received a deed to the North Lot, and Mrs. Donahue received a deed to the South Lot, she being required to pay $700 into the estate as equalization. Walter moved into the house on his lot, and Mrs. Donahue placed a tenant in the other house, with no point being raised as to the encroachment of Mrs. Donahue's house on the North Lot. A month or so later, Walter conveyed the North Lot to his daughter and son-in-law, Mr. and Mrs. Beatty, and within a few months he died. The Beattys continued to live on the property, and no question as to the encroachment arose until 1946, when the daughter and son-in-law undertook to sell their property to a Mr. and Mrs. Peffer. A survey then was made, and it appears that this was the first time Mrs. Donahue became aware of the encroachment. Some discussion was had between the Beattys and Mrs. Donahue concerning the encroachment, and the Beattys then asserted their claim of ownership to the boundary described in their deed. The Beattys subsequently sold their house to the Peffers, but conveyed a frontage of only 96 feet, thus retaining paper title to the strip 9 feet and 8 inches in width occupied by the north part of Mrs. Donahue's house.

Thereafter Mrs. Donahue brought this action to reform the deed under which the North Lot was conveyed to Walter Harris.

Mrs. Donahue and three of the other children of George Harris testified clearly and positively that the negotiations and agreement for the division of the estate of their father were carried on with reference to the street numbers of the various houses, and it was distinctly understood that each child was to receive a house and lot. However, in drafting the deeds, the attorney for the administrator merely copied the descriptions in the former deeds by which George Harris had acquired his properties, and no surveys were made to locate property lines. It is clear from this testimony that the *agreement* between the children was that Mrs. Donahue was to get all of the house at 108 South 35th Street, and not merely two-thirds of the house.

The evidence upon which the appellants rely to support their contention that the mistake was unilateral and not mutual consists of the testimony of Elizabeth Harris, widow of Walter, to the effect that a few days before the division deeds were executed, Walter and she paced off the frontage of the North Lot, in accordance with the description in the deed by which George Harris had acquired the lot, and in so doing Walter became fully aware of the fact that the house to be conveyed to his sister encroached on the North Lot. Upon the basis of this testimony, appellants argue that "Walter Harris knew just exactly what he was receiving in the division."

It will be observed that the above testimony of Mrs. Harris does not purport to show that there was any *agreement* that Walter was to receive a 10-foot strip of his sister's house; at the most, the testimony indicates Walter's knowledge that, *if the attorney should copy the old descriptions in making the division deeds,* he might beat his sister out of part of the property everyone intended her to receive in the division.

The courts cannot uphold this kind of sharp practice on the part of one member of a family against another. As stated in Corbin on Contracts, part 3, sec. 610, p. 445, with reference to a party who knows

of the other's mistake and says nothing: "It is certain that such a bad actor will not be permitted to enforce the agreement according to its words * * *."

 There are a number of reasons why the claim of unilateral mistake is not available here. First, there is the rule that knowledge by one party of the other's mistake regarding the expression of the contract is equivalent to mutual mistake. Williston on Contracts, vol. 3, p. 2745; New England Mut. Life Ins. Co. v. Jones, D.C., 1 F.Supp. 984; 76 C.J.S., Reformation of Instruments, § 28, p. 366. Second, there is respectable authority for the proposition that where a scrivener representing both parties makes a mistake in reducing the agreement to writing, it is not necessary to allege a mutual mistake. See 26 A.L.R. 503, 504. That Kentucky is in accord with that proposition is indicated by Whitt v. Proctor, 305 Ky. 454, 204 S.W.2d 582, in which this Court said that a deed will be reformed for a mistake of the scrivener *or* for mutual mistake of the parties. Third, it is universally recognized that an instrument may be reformed where there is a mistake on one side and fraud or inequitable conduct on the other. City of Campbellsville v. Taylor County Tel. Co., 229 Ky. 843, 18 S.W.2d 305; 45 Am.Jur., "Reformation of Instruments," sec. 62, p. 621.

In defense of Walter Harris who, being dead, is not here to speak for himself, it perhaps should be pointed out that it is only the testimony of his widow that characterizes him as the kind of person who would try to cheat his sister out of part of her inheritance. The widow's testimony contains numerous conflicting, contradictory and emotionally-influenced statements, and it may be that Walter does not deserve the blot on his character which results from an acceptance of the truth of her testimony.

In order that the reader of this opinion may understand how the judgment of reformation was made enforceable as to the Beattys, who were purchasers of the land from the original vendee, Walter Harris, we will mention that the deed to the Beattys was adjudged to be void as champertous, by reason of the fact that Mrs. Donahue was in adverse possession at the time of that deed. No question has been raised, on this appeal, as to that part of the judgment.

The judgment is affirmed.